UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FISH HOOK DISTILLING COMPANY LLC,
d/b/a VALENTINE DISTILLING
COMPANY, et al.,

Case No. 23-11626

F. Kay Behm
United States District Judge

      Plaintiffs,

v.

VESTER PROPCO, L.L.C. and CITY OF
FERNDALE,

      Defendants.

_____ /

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS IN PART
AND DECLINING TO EXERCISE JURISDICTION OVER
<u>REMAINING STATE LAW CLAIMS (ECF Nos. 7, 8)</u>**

Plaintiffs Fish Hook Distilling Company (doing business as Valentine

Distilling Company), 161 Vester Holdings, Jesters One, Inc. (doing business as

Howe's Bayou), and 22848 Woodward LLC (together, "Plaintiffs") filed a

complaint in the Oakland County Circuit Court on May 31, 2023.  (ECF No. 1-1).

Plaintiffs' complaint is based on allegations that Defendants Vester Propco, L.L.C.

("Vester") and the City of Ferndale ("Ferndale") (together, "Defendants") violated

Ferndale's Zoning Ordinance by advancing a development project without

adequately replacing off-street parking.  *Id.*  Their complaint raises claims for a

1

declaratory judgment (Count I), violation of their substantive due process rights

(Count II), a constitutional taking (Count III), and nuisance and nuisance per se

(Counts IV and V).  *Id.*  On July 7, 2023, Defendant Ferndale removed this case to

the United States District Court, Eastern District of Michigan based on the

existence of a federal question.  (ECF No. 1, PageID.2); *see also* 28 U.S.C. § 1441.

On July 14, 2023, in lieu of filing an answer, Defendants Vester and Ferndale each

filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  (ECF Nos. 7, 8).  The court held a hearing on these motions on February

7, 2024, and both parties participated in oral argument.  (*See* ECF No. 19).  For the

reasons stated below, the court finds Plaintiffs have failed to state a claim upon

which relief can be granted as to their only federal claim, Count II, and declines to

exercise jurisdiction over the remaining state law and declaratory judgment

claims.

## I.    FACTUAL BACKGROUND

Plaintiffs own bars and restaurants located at 161 Vester Avenue and

22848 Woodward Avenue in Ferndale, Michigan.  (ECF No. 1-1, PageID.10).  This

case stems from the rezoning of a parcel of land located at 141 Vester Avenue in

Ferndale ("141 Vester") from P-1 "Vehicular Parking District"[1] to "CBD" (Central

Business District).[2]  *Id.*, PageID.12.  At the time of filing, 141 Vester consisted of 76

public parking spaces that "serve[] as the primary, if not the only, off-street

parking for Plaintiffs and other adjacent businesses in the City's East

Downtown/Vester area."  (ECF No. 14, PageID.337).  In early 2022, Defendant

Vester applied for a planned unit development (PUD) to develop a four-story,

mixed-use, multi-family building on the 141 Vester property.  *Id.*  The City of

Ferndale's formal PUD review process, in short, requires the applicant to first

present a preliminary plan to the City Planning Commission, who must hold a

public hearing and make a recommendation to the City Council.  (ECF No. 1-1,

PageID.13) (citing City Ordinance § 24-305(a)-(b)(1)).  The City Council must then

hold a "public hearing and approve, approve with conditions, or deny the final

PUD plan and associated rezoning."  *Id.*

In this case, the City Planning Commission conducted a preliminary review

of Defendant Vester's PUD application in July of 2021.  *Id.*, PageID.14.  Plaintiffs

argue that, even at the primary review stage, the "public comments addressed

---

[1] Pursuant to Ferndale City Ordinance § 24-121, "the P-1 district is intended primarily to accommodate areas to be used solely for off-street vehicular parking."

[2] Pursuant to Ferndale City Ordinance §24-61(a), the "CBD zoning district is designed to provide for a variety of office, business, service, entertainment and retail uses which occupy prime retail frontage and serve the needs of the city and the surrounding communities."

the substantial impact the PUD would have on parking." *Id.* (citing July 21, 2021

Planning Commission Meeting Minutes).  Defendant Vester submitted their

official application for a PUD in August of 2021, and shared updates at the City

Planning Commission's meeting on October 6, 2021.  *Id.*  Plaintiffs argue the

public feedback at the October 6 meeting again "focused on the issue of off-street

parking in the East Downtown/Vester area."  *Id.*  At a public hearing on the PUD

application on January 19, 2022, the Planning Commission recommended

approval of Vester's PUD site plan, engineering, stormwater plan, PUD

agreement, and details.  *Id.*; *see also* ECF No. 8, PageID.153.  Plaintiffs argue this

approval was "despite consistent opposition from Plaintiffs and other community

members regarding the horrible impact the PUD would have on parking in the

area."  *Id.*  On February 28, 2022, the City Council held a public hearing and

formally approved both the PUD and the zoning change.  *Id.*, PageID.18 ("City

Council approved the PUD three to two…").  Plaintiffs argue this approval was

granted despite "serious concerns that the PUD would eliminate parking in the

Downtown/Vester Area."  *Id.*, PageID.15.

   The City Council's approval of the PUD was also related to the proposed

development of a parking structure on a nearby plot of land, 180 Vester Ave.  *Id.*,

PageID.18 ("[the] request for special land use to create a parking structure at 180

Vester was the only real viable option to accommodate the off-street parking loss if the city approved the PUD.").  Specifically, the City Council "approved the PUD...with a condition that the Developer 'delay construction for 14 months from the date of City Council approval of planning and zoning applications to create an *opportunity* for the planned parking deck at 180 Vester to be built first," although this was not a firm requirement.  *Id.* (emphasis in original).  As of the date of filing, Plaintiffs claim the 180 Vester Parking structure plan has not materialized and is now "dead in the water."  *Id.*

Defendant Ferndale "regulates parking, PUDs, and rezoning, among other things, through its Zoning Ordinance – Chapter 24 of its Code of Ordinances." (ECF No 7, PageID.57-58).  Plaintiffs argue the approval of Defendant Vester's PUD violated two separate City Ordinances: (1) the requirement to replace off-street parking in another location; and (2) the requirement for a new development to include a set number of residential and retail parking spaces.  (ECF No. 1-1, PageID.18).  City Ordinance § 24-222(a) states: "[w]henever use of a building or lot is changed to another classification of use, off-street parking facilities shall be provided as required by this article," including that "[a]n area designated as required off-street parking shall not be changed to another use unless equal facilities are provided elsewhere..."  (*See* ECF No. 8-2, PageID.179, Zoning

Ordinance Excerpts).  Plaintiffs argue that, by approving the PUD without requiring another parking facility to be built, Defendant Ferndale violated this ordinance.  (ECF No. 1-1, PageID.18) ("In order to comply with [the Ordinance], the condition should have stated that the parking deck (or some other parking facility) <u>must</u> be built, as opposed to merely providing an 'opportunity' for a planned parking deck.").  City Ordinance § 24-223 establishes the required number of off-street parking spaces that must be provided for different types of establishments.  *Id.*  Given the number of residential units in the PUD, Plaintiffs argue that it was technically required to have 72 spaces, but "[Developer] acknowledge[d] that the PUD provides 52 spaces, leaving a deviation of 20 spaces."  *Id.* (citing February 28, 2022 City Council Meeting Minutes).

## II.    STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) alleges the court does not have subject matter jurisdiction over the claims as presented.  Fed. R. Civ. P. 12(b)(1).  Allegations that a plaintiff lacks standing can be brought as a motion to dismiss for lack of subject matter jurisdiction.  *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing – lack of subject matter

jurisdiction – under Fed. R. Civ. P. 12(b)(1).").  Motions brought under Rule

12(b)(1) fall into two categories: facial attacks and factual attacks.  *United States*

*v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack is a "challenge to the

sufficiency of the pleading itself" whereas a factual attack "is a challenge to the

factual existence of subject matter jurisdiction."  *Id.*  In this case, Defendants bring

a facial attack and, therefore, the court must "accept[] the material allegations in

the complaint as true and construe[] them in the light most favorable to the

nonmoving party."  *Id.*

      B.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court

must also "construe the complaint in the light most favorable to the [nonmoving

party] ... [and] accept all well-pled factual allegations as true*."  League of United*

*Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz*

*v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must

provide "'a short and plain statement of the claim showing that the pleader is

entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is

and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the

complaint must "contain[] sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion to dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d

561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

### III.   ANALYSIS

Defendant Vester and Defendant Ferndale each filed separate motions to dismiss.  (ECF Nos. 7, 8).  While the two motions are different, they generally raise similar concerns, and the court will address them together.  Defendant Vester's motion argues each of Plaintiffs' claims fail as a matter of law and Plaintiffs lack standing to assert their nuisance per se claims.  (ECF No. 7).  Defendant Ferndale's motion similarly argues each of Plaintiffs' claims fail as a matter of law, but argues Plaintiffs lack standing to bring their entire action because they have not suffered any relevant injuries.  (ECF No. 8).  Because a lack of subject matter jurisdiction will mandate dismissal of the case and render Defendants' Rule 12(b)(6) motions moot, the court must first address the allegations that Plaintiffs' claims should be dismissed for lack of standing pursuant to Rule 12(b)(1).  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)) (motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction).

A.    Standing

Article III of the Constitution requires a plaintiff to have a "personal stake" in their case, otherwise known as standing.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  To establish standing, the plaintiff bears the burden of showing: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  These elements are not "mere pleading requirements but rather an indispensable part of the plaintiff's case" and, likewise, they "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.  At the pleading stage, the complaint must be construed liberally in favor of the nonmoving party, and "[g]eneral factual allegations of injury may suffice to demonstrate standing."  *White v. United States*, 501 F.3d 545, 551 (6th Cir. 2010) (citing *Lujan*, 504 U.S. at 561) ("for on a motion to dismiss we presume[e] that general allegations embrace those specific facts that are necessary to support the claim.").  Additionally, the "standing inquiry is not a merits inquiry," and a merits defect will deprive the court of subject matter

jurisdiction "only if the claim is utterly frivolous." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

It is not disputed that Plaintiffs satisfy the second and third prongs of the standing inquiry.[3]  Instead, the key question is whether Plaintiffs have suffered an injury in fact, "the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co.*, 523 U.S. at 103).  To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citing *Lujan*, 504 U.S. at 560).  To be "concrete," an alleged injury must be "de facto," that is it must actually exist.  *Id.* at 340.  To be "particularized," an injury "must affect the plaintiff in a personal and individual way, not in a general manner that affects the entire citizenry." *Gerber*, 14 F.4th at 506 (citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007)).  Finally, to sufficiently allege that an injury is "actual and imminent," a plaintiff must show that their injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Allegations of *possible* future injury

---

[3] Plaintiffs have sufficiently alleged that their injuries are fairly traceable to the Defendants' actions regarding the PUD application and approval and would be redressed by their requested relief.  *See TransUnion LLC*, 141 S. Ct. at 2203.

are not enough, nor are claims based on a "highly speculative fear" that a decision

will harm them at some future date.  *Id.* at 409-10.  An injury is not "certainly

impending" if it is contingent on a chain of events which "veers 'into the area of

speculation and conjecture.'"  *White*, 601 F.3d at 554.  Courts are especially

cautious when an alleged injury "depends on the unfettered choices made by

independent actors not before the court [] and whose exercise of broad and

legitimate discretion the court [] cannot presume to either control or predict."

*United States v. Carroll*, 667 F.3d 742, 745 (6th Cir. 2012) (quoting *Lujan*, 504 U.S.

at 562).

Plaintiffs argue they have standing to bring this case because they "have

adequately plead [sic] their protected interests and injuries suffered, including the

substantial harm to their business interest" and they "have standing as

neighboring property owners who have suffered at the hands of the city's

arbitrary and capricious conduct."  (ECF No. 14, PageID.343).  In their complaint,

they allege the following injuries: (1) a loss of customers as a result of the parking

issues exacerbated by the PUD; (2) a violation of their substantive due process

rights under the United States and Michigan Constitutions; (3) a deprivation of

the full use and enjoyment of their property, "where they can no longer attract

the customers needed to conduct their businesses and will be forced to lay off

employees" rising to the level of an unconstitutional taking; and (4) a "diminution in the value of 161 Vester and 22848 Woodward, including, *inter alia*, loss of customers and profitability…" constituting both a public and private nuisance, as well as a nuisance per se.  (ECF No. 1-1, PageID.20-27).  Because Plaintiffs must show they suffered a sufficient injury for each claim they press, the court will address each of Plaintiffs' alleged injuries to determine if they rise to the level of an injury in fact.  *See Vonderhaar v. Vill of Evendale, Ohio*, 906 F.3d 397, 401 (6th Cir. 2018) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

       i.    *Economic Injuries*

A number of Plaintiffs' claims are premised on allegations that Defendants' actions will "eliminate customer and employee parking for Plaintiffs and other nearby businesses."  (ECF No. 1-1, PageID.8).  Plaintiffs argue the elimination of parking in the East Downtown/Vester area will leave them with "no choice but to lay off employees (many of whom are residents of the City), lose their customers, be deprived of their goodwill and reputation in the business community, and be divested of their investments."  *Id.*, PageID.9.  First, the court notes that Plaintiffs have not plausibly alleged that they are *currently* suffering any of these injuries. They argue the "PUD approval already caused and limited Plaintiffs and their customers' ability to park and frequent their businesses and further harmed rights

to replacement parking," and, as a result, they have lost value in their property and customers.  (ECF No. 15, PageID.388-89).  However, Plaintiffs' complaint does not allege that the construction has started or there has been any material change to the current parking situation that has resulted in an actual loss.[4]

Instead, Plaintiffs' claims are based on allegations of future harm.  "[A] yet-to-happen 'injury must be *certainly impending* to constitute injury in fact.'"  *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 545 (6th Cir. 2021) (quoting *Clapper*, 568 U.S. at 409).  To satisfy the "certainly impending" requirement, a plaintiff must allege more than a "highly attenuated chain of possibilities."  *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (citation omitted).  However, at the pleading stage, the court must still "accept the allegations set forth in the complaint as true [and] draw[] all inferences in favor of the plaintiff."  *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (citing *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014)).  In this case, Plaintiffs' theory of future injury

---

[4] Plaintiffs do allege "the approval of the PUD has already harmed Plaintiffs where Developer has failed to service 141 Vester on at least two occasions, causing the same to become inoperable."  (ECF No. 14, PageID.340 n.2).  However, these alleged injuries are not directly related to the conduct at issue in this case.  Plaintiffs do not own 141 Vester and have not alleged that Defendant Vester has any contractual requirement to ensure it always remains serviced for public parking.

relies on a series of "economic assumptions," including that customers will not continue to visit their businesses if they cannot park in the East Downtown/Vester area, Plaintiffs' profits will drop as a result, and eventually this drop in patronage will force Plaintiffs' businesses to close.  *See Osborn v. Visa, Inc.*, 797 F.3d 1057, 1066 (D.C. Cir. 2015) ("Plaintiffs also rely on certain economic assumptions about supply and demand…[which] are provable at trial).[5]  While this chain of causation is not certain, the allegations are "specific, plausible, and susceptible to proof at trial," which is enough to "pass muster for standing purposes at the pleadings stage."  *Id.* (comparing the standing analysis on a motion for summary judgment where the question is "whether the plaintiff has offered sufficient evidence to conclude that its theory is correct" with the analysis at the pleadings stage where the question is "whether the plaintiff has asserted a plausible theory of harm.").  Plaintiffs allege a number of specific, provable facts including that the PUD will "eliminate customer and employee parking" for their businesses and the entire East Downtown/Vester area that will "harm[] their ability to attract, service, and retain customers and will inevitably cause Plaintiffs to lose capital and profits, lay

---

[5] *Osborn* is not binding on this court, and it does not appear to have been adopted or cited by the Sixth Circuit in a published case.  However, the Sixth Circuit has not yet addressed a case involving a similar economic theory as part of the injury in fact standing analysis and, as such, *Osborn's* reasoning is persuasive.

off employees, and possibly close their businesses altogether," and will result in a

"diminution in the value of 161 Vester and 2848 Woodward."  (*See* ECF No. 1-1,

PageID.25-26).  As such, viewing all facts in the light most favorable to Plaintiffs,

this chain of causation is sufficiently plausible to form an injury in fact for the

purpose of Article III standing.  *See also Adams v. Watson*, 10 F.3d 915, 923-24

(1st Cir. 2003) (milk producers alleging increased prices will lead to the failure and

closure of their businesses based on basic principles of supply and demand set

forth "adequate grounds to demonstrate, *at the pleading stage*, a sufficient

likelihood" of injury).

> ii.    *Violation of Substantive Due Process Rights*

Count II of Plaintiffs' complaint alleges they have been injured where the

Defendants have violated their Substantive Due Process rights under the United

States and Michigan Constitutions.  (ECF No. 1-1, PageID.21).  To have standing to

bring a substantive due process claim, a plaintiff must plausibly allege they were

denied the exercise of a relevant substantive due process right.  *Kanuszewski*, 927

F.3d at 408 (holding that parents who have a substantive due process right to

make decisions relating to their children's medical care "have suffered an injury in

fact from having been denied the exercise of the right, which affords them

standing to pursue damages.").  Plaintiffs argue they have standing because it is

well-established that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions."  *Hearns Concrete Const. Co. v. City of Ypsilanti*, 241 F. Supp. 2d 803, 811-12 (E.D. Mich. 2003) (citing *Zinermon v. Burch*, 494 U.S. 113, 115 (1990)).  Because "the City's approval of the PUD was arbitrary and capricious" Plaintiffs argue their substantive due process rights have been violated.  (ECF No. 1-1, PageID.20).  This is sufficient, at the pleading stage, to act as an injury in fact sufficient to confer standing.

### iii.   Constitutional Takings Claim

Count III of Plaintiffs' complaint alleges they have been injured because Defendants' actions "have the effect of taking away the economic viability of Plaintiffs' businesses."  (ECF No. 1-1, PageID.23).  The Sixth Circuit has previously recognized the tension between the "overlapping requirements for jurisdiction and the merits" especially when applied to takings clause claims.  *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 485 (6th Cir. 2021) ("what happens if a plaintiff fails to prove the required property interest? Does it show the lack of the 'legally protected interest' necessary for jurisdiction? Or does it instead show the lack of a 'cognizable' interest necessary for the merits of the takings claim?").  However, the Court held that "as long as a plaintiff has asserted a colorable legal claim (and has met standing's other elements), the plaintiff has satisfied Article III and the

court may resolve the claim on its merits." *Id.* at 485-86.  Defendants argue

Plaintiffs do not have a property interest in the 141 Vester lot and have alleged

only a speculative future decline in the value of their own properties, neither of

which are sufficient to bring a takings claim.  (ECF No. 7, PageID.72; ECF No. 8,

PageID.170).  However, based on the allegations included in their complaint,

Plaintiffs have asserted at least an "arguable" property interest in the continued

operation of their businesses sufficient to establish standing.  *See CHKRS, LLC*, 984

F.3d at 489 (citing *Steel Co.*, 523 U.S. at 88) ("Only if the claimed protected

interest is 'wholly insubstantial and frivolous' does a claim's failure on its merits

turn into a jurisdictional defect.").  Any further argument on the validity of these

property interests is best evaluated on the merits.

B.    Merits Inquiry

Because Plaintiffs have alleged enough at the pleading stage to

demonstrate they have standing to bring each of their claims, the court will

proceed to address the arguments raised by both Defendants in their motions to

dismiss.  *See Moir*, 895 F.2d at 269 (citation omitted) (motion to dismiss for failure

to state a cause of action may be decided only after establishing subject matter

jurisdiction).  Defendants argue each count of Plaintiffs' complaint must be

dismissed because they have failed to state a claim upon which relief can be

granted pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, they argue: (1) Plaintiffs'

substantive due process claim fails because they do not have a constitutionally

protected liberty or property interest, Defendant Ferndale's decision to issue the

PUD was wholly discretionary, and they did not act arbitrarily or capriciously;[6] (2)

---

[6] Defendant Vester also argues Plaintiffs are collaterally estopped from asserting their substantive due process claim.  (ECF No. 7, PageID.69).  This argument is based on the case *Smith v. City of Ferndale*, 2022-193307-CZ, which was decided by the Oakland County Circuit Court in the spring of 2022.  (ECF No. 7, PageID.58).  *Smith* was brought by Ferndale residents who owned residential property adjacent to 141 Vester.  *Id.*  The City of Ferndale filed a motion for Summary Disposition, "arguing, among other things, that the Smiths did not have a constitutionally protected property interest in the zoning designation of the neighboring property, and that the City did not act arbitrarily or unreasonably in rezoning the Property in any event."  *Id.* (citing ECF No. 7-4, Defendant City of Ferndale's Motion for Summary Disposition).  The Oakland County Circuit Court granted the City's Motion for Summary Disposition and dismissed the action with prejudice on October 13, 2022.  *Id.*; *see also* ECF No. 7-5, Order Regarding Motion.

Under Michigan law, collateral estoppel requires that: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment, (2) the parties or privies must have had a full [and fair] opportunity to litigate the issue, and (3) there must be mutuality of estoppel."  *Mecosta Cnty. Med. Ctr. v. Metro. Grp. Prop. & Cas. Ins. Co.*, 509 Mich. 276, 283-84 (2022) (internal quotation marks and citations removed).  Importantly, collateral estoppel only applies where the parties in the subsequent action are the same parties or are privies of the parties to the original action.  *Id.*  Privity, "has been defined as 'mutual or successive relationships to the same right of property, or such an identification or interest of one person with another as to represent the same legal right.'"  *Id.* (citing *Sloan v. Madison Hts.*, 425 Mich. 288, 295 (1986)).

Here, Defendants argue they are in privity with the Smiths because "they, too, have a protected property interest in a neighboring parking lot and were denied substantive due process by the City's allegedly arbitrary and capricious action in deciding to rezone the Property neighboring theirs (and the Smiths') and grant the PUD."  (ECF No. 7, PageID.70).  However, "privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same set of facts."  *Mecosta Cnty. Med. Ctr.*, 509 Mich. at 284 (citing *Sodak Distrib. Co. v. Wayne*, 77 S.D. 496, 502 (1958)).  Because Defendants have shown no more than a mutual interest in the resolution of this question, they are not in privity with the Smiths and collateral estoppel does not apply in this case.

Plaintiffs' constitutional takings claim fails because they cannot show Defendant

Ferndale's actions limited the use of their property; (3) Plaintiffs' nuisance claims

fail because they have not shown a unique injury and any claims against

Defendant Ferndale are barred by the Government Tort Liability Act (GTLA); and

(4) Plaintiffs are not entitled to declaratory or injunctive relief.  (ECF Nos. 7, 8).

The court will address their arguments relating to each count in turn.

> i.     *Count II: Violation of Substantive Due Process Rights*

Plaintiffs argue Defendant Ferndale's actions to approve the PUD were

"arbitrary and capricious in light of Plaintiffs' and the community's needs and

demands," and violated Plaintiffs' substantive due process rights under both the

United States and Michigan Constitutions.  (ECF No. 1-1, PageID.20-22).  Citizens

generally have a substantive due process right "not to be subjected to arbitrary or

irrational zoning decisions."  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573

(6th Cir. 2008), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*,

139 S. Ct. 2162 (2019).  To state a substantive due process claim in the context of

zoning regulations, a plaintiff must show: "(1) a constitutionally protected

property or liberty interest exists, and (2) the constitutionally protected interest

has been deprived through arbitrary and capricious action."  *Id.*; *see also EJS*

*Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).  It logically

follows that, unless an individual has a constitutionally protected property or liberty interest at stake, their substantive due process rights cannot have been violated by arbitrary action alone.  *EJS Properties, LLC*, 698 F.3d at 855 (noting "the Sixth Circuit did not eliminate the requirement of a property interest" when holding that "citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions."); *see also Royal Oak Ent., LLC v. City of Royal Oak, Michigan*, 205 F. App'x 389, 396 (6th Cir. 2006) (plaintiffs lacked standing to sue for commission's failure to transfer a liquor license because "they [had] no property interest in the license or its transfer.").

Here, Plaintiffs do not allege their claim is based on a constitutionally protected liberty interest.[7]  Plaintiffs instead argue they have and will continue to suffer a depravation of their constitutionally protected property interest in "their highly successful businesses."  (ECF No. 1-1, PageID.20-23).  Whether a person has a constitutionally protected property interest is typically a question of state law, but "[f]ederal constitutional law…'determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'"

---

[7] While it is not being directly alleged in this case, the Sixth Circuit has previously held there is no general proposition "that a constitutionally protected liberty interest arises from an expectation that municipalities will follow their own ordinances."  *Tollbrook LLC v. City of Troy*, 774 F. App'x 929, 934 (6th Cir. 2019) (holding the plaintiff "fails to allege a constitutionally protected liberty interest in the City Council's adherence" to a zoning requirement.).

*Tollbrook, LLC*, 774 F. App'x at 934.  It is not contested that Plaintiffs do not own,

lease, or have any other contractual property interest in 141 Vester.  Additionally,

while "property owners may have a property interest in the existing zoning

classification for their property," Plaintiffs do not allege the Defendants' actions

changed the zoning classification for either 161 Vester or 22848 Woodward.[8]  *EJS*

*Properties, LLC*, 698 F.3d at 856.

Plaintiffs argue "the City's PUD approval and failure to comply with its own

ordinances caused a substantial diminution in the value of their properties, loss of

quiet enjoyment, loss of customer base, and loss of goodwill."  (ECF No. 14,

---

[8] The Ferndale City Ordinances also expressly state that individuals cannot have a direct property interest in the continuation of a particular zoning classification:

> It is expressly declared that **nothing in this chapter shall be construed or interpreted to give rise to any permanent vested rights in the continuation of any particular use, district or zoning classification or any permissible activities**, except where an applicant has commenced excavation or construction pursuant to a valid building permit and site plan approval, if required, which has resulted in a tangible change in the land. Otherwise the continuation of any particular use, district or zoning classification or any permissible activities are declared to be subject to subsequent amendment, change or modification as may be necessary to preserve and protect public health, safety and welfare.

(*See* ECF No. 7-2, PageID.81; City Ordinance § 24-5) (emphasis added).

PageID.347).  To establish a constitutionally protected property interest, an individual must have more than an "abstract need or desire for it" or a "unilateral expectation of it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Instead, an individual must have a "legitimate claim of entitlement to it."  *Id.*  While individuals may have a valid property interest in their business under Michigan law, this interest does not expand to that business' continued *success*.  *See Charles Murphy M.D., P.C. v. City of Detroit*, 201 Mich. App. 54, 55 (1993) (the court found "as a matter of law, defendants did not take anything that could be construed as plaintiffs' property" where plaintiffs merely alleged that their "volume of business was reduced about seventy-five percent from what it was before defendants' action.").  The Sixth Circuit has not addressed the question of whether a business' economic viability or diminished profitability is a property interest sufficient to support a claim for substantive due process, but courts in a variety of other circuits have generally found that it is not.  *See Bender v. City of St. Ann*, 816 F. Supp. 1372, 1376 (E.D. Mo. 1993), *aff'd* 36 F.3d 57 (8th Cir. 1994) ("Commercial success, i.e. larger profits, is not a property interest because there is no entitlement to increased business profits under state or federal law.");  *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600-01 (3d Cir. 1995), *overruled on other grounds by United Artists Theatre Circuit, Inc. v.*

*Township of Warrington*, 316 F.3d 392, 400-02 (3d Cir. 2003)) (plaintiffs' allegations that the defendants had "interfered with Plaintiffs' 'use and enjoyment' of their property 'by significantly diminishing its economic value and creating an atmosphere of oppression'" were not protected property interests sufficient to support a substantive due process claim); *Hammond v. Contino*, No. CIV. 14-1042 RBK/AMD, 2014 WL 6388757, at *4 (D.N.J. Nov. 17, 2014) ("Plaintiff describes his deprivation of property as 'the demise of The Hammond Group and the loss of business profits from its operation'...[t]hese are not constitutionally protected interests."); *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 49-50 (3d Cir. 2019) ("Plaintiffs allege that the zoning actions of the County have resulted in a loss of business, which has deprived Plaintiffs of 'owning and using real property.' However, a substantive due process right to conduct business without zoning interference extends beyond our precedent."); *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1069 (E.D. Cal. 2021) ("From what can be gathered, Plaintiffs are still able to operate their businesses but in a significantly reduced capacity...Plaintiffs have not met the threshold step of asserting a liberty or property interest protected by the U.S. Constitution.").

Finally, to the extent Plaintiffs allege their constitutionally protected property interest is their current property value, a number of courts have held

that "a decline in property value, by itself, cannot support a substantive due process claim." *Snyder v. Village of Luckey, Ohio*, No. 3:22 CV 2282, 2024 WL 556134, at *7 (N.D. Ohio Feb. 12, 2024) ("decrease in value of the property and hampering of their ability to sell" was insufficient to demonstrate a protected property interest); *see also Kriss v. Fayette Cnty.*, 827 F.2d 477, 493 (W.D. Pa. 2011), *aff'd* 504 F. App'x 182 (3d Cir. 2012) (collecting cases).

Even viewing the facts in the light most favorable to Plaintiffs, the court cannot find that the economic viability of their businesses is a constitutionally protected property interest sufficient to form the basis of a substantive due process claim. *See Advance Corp. v. Baltimore Cnty., Maryland*, No. CV DLB-21-2926, 2022 WL 4225475, at *4 (D. Md. Sept. 13, 2022) ("even assuming there is a protected property interest in the operation of a business, Advance Corp alleges it continues to operate its business, albeit with some inconvenience and extra cost. So, Advance Corp.'s substantive due process claim must be dismissed for failure to allege the deprivation of a constitutionally protected property interest."). Because Plaintiffs do not otherwise have a direct property interest in 141 Vester or its zoning classifications, they have not demonstrated they possess a constitutionally protected property interest sufficient to support a substantive due process claim.

Further, even if Plaintiffs did have a constitutionally protected property interest in the continued economic viability of their businesses, they have failed to adequately plead that this interest was deprived through arbitrary and capricious action.  The Sixth Circuit has previously cautioned that "[a] court should not interfere with local zoning decisions unless the locality's action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare."  *Braun*, 519 F.3d at 574 (internal quotation marks removed).  This high standard requires a zoning decision to "shock the conscience."  *See EJS Properties, LLC*, 698 F.3d at 861-62 ("the 'shocks the conscience' terminology was indeed relevant in the zoning context to emphasize the degree of arbitrariness required to set aside a zoning decision by a local authority.").  Under this standard, a substantive due process violation will generally only be found where there was no possible rational basis for the decision.  *Horn v. City of Mackinac Island*, 938 F. Supp. 2d 712, 720 (W.D. Mich. 2013).  "In other words the government's actions must be so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency.  To say the least, it's a tough test."  *Golf Vill. N., LLC v. City of Powell, Ohio*, 42 F.4th 593, 601 (6th Cir. 2022) (citing

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957))).

In this case, Plaintiffs argue Defendant Ferndale's decision to approve the PUD without replacing the public parking as required by City Ordinance § 24-222(a)(4) was arbitrary and capricious.  (*See* ECF No. 8-2, PageID.179) ("An area designated as required off-street parking shall not be changed to another use unless equal facilities are provided elsewhere…").  However, City Ordinance § 24-301 notes that the PUD regulations are intended to "provide a development option that allows for flexibility in normal zoning requirements."  *Id.*, PageID.182.  One stated goal of PUDs is to "promote the development of compact, mixed-use developments that will support public transportation and result in sustainable and healthy neighborhoods."  *Id.*; *see also* City Ordinance § 24-303(c)(10) ("Benefits beyond those otherwise required by this Ordinance may include, but are not limited to…pedestrian and transit oriented development.").  These stated goals, as well as numerous others, indicate that the City of Ferndale sought to encourage developments that both diversify the type of housing in the city and support pedestrian and transit-oriented transportation.  *Id.*; *see also* ECF No. 1-1, PageID.9 ("it represents nothing other than a local government zealously overextending its reach to promote *its lofty goal of vehicle-free spaces and bike*

27

*lanes.*") (emphasis added). While these goals may not serve every existing business or resident in the Ferndale community, they are reasonable and common goals for a municipality to advance. As such, even if Defendant Ferndale did violate their own zoning ordinances in approving Defendant Vester's PUD application, their actions were not "so shocking as to shake the foundations of this country," and cannot form the basis of a substantive due process claim. *Golf Vill. N., LLC*, 42 F.4th at 602; *see also EJS Props.*, 698 F.3d at 862 (finding the solicitation of a bribe by a public official is not "so shocking as to shake the foundations of this country."); *Johnson v. City of Saginaw, Michigan*, 980 F.3d 497, 514 (6th Cir. 2020) ("neither [party] point[s] to any controlling authority suggesting that the simple misinterpretation and misapplication of a municipal ordinance constitutes a violation of substantive due process.").

Even viewing the facts of this case in the light most favorable to Plaintiffs, they have failed to establish they have a constitutionally protected property interest in the economic viability of their businesses and that Defendant Ferndale acted arbitrarily or capriciously. As such, they have failed to state a substantive due process claim and Count II must be dismissed.

ii.      *Remaining Claims (Counts I, III, IV, and V)*

Because the court finds that Plaintiffs' substantive due process claim must

be dismissed, the court must next determine whether to exercise supplemental

jurisdiction over the remaining claims brought under Michigan law.  *See Carnegie-*

*Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("a federal court should consider

and weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity in order to decide whether to

exercise jurisdiction over a case brought in that court involving pendent state-law

claims.").  Where, as here, "the federal-law claims have dropped out of the

lawsuit in its early stages and only state-law claims remain, the federal court

should decline the exercise of jurisdiction."  *Id.*; *see also United Mine Workers of*

*Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before

trial…the state claims should be dismissed as well.").  In this case, the court

dismissed Plaintiffs' only claim invoking federal law.[9]  Each of the remaining

---

[9] The court originally had jurisdiction over this case based on the existence of a federal question, specifically because Plaintiffs raised claims under the Due Process Clause of the Fourteenth Amendment and sought damages and attorney fees pursuant to 42 U.S.C. § 1983 and § 1988(b).  (ECF No. 1, PageID.2).

takings[10] and nuisance claims are state law matters which should be decided by a state court. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). As such, these claims are remanded to the Oakland County Circuit Court. *Carnegie-Mellon Univ.*, 484 U.S. at 357 ("a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

The only count remaining is Plaintiffs' claim for a declaratory judgment (Count I). Because the court did not find in favor of Plaintiffs on their substantive due process claim and now remands the remaining state law claims for determination in state court, the Plaintiffs' remaining request for a declaratory judgment will be better decided in that forum as well. *Carnegie-Mellon Univ.*, 484 U.S. at 357 ("The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity…").

---

[10] The notice of removal claims that Count III was also brought pursuant to the "Fifth Amendment, Takings Clause, of the United States Constitution." (ECF No. 1, PageID.2). However, Plaintiffs' complaint raises their constitutional takings claim under only "Article X, § 2 of the Michigan Constitution of 1963," not the Fifth Amendment to the United States Constitution. (ECF No. 1-1, PageID.23). As such, this claim shall be analyzed using only Michigan law.

## IV.    CONCLUSION

Even viewing the allegations in the complaint in the light most favorable to Plaintiffs, they have failed to state a claim upon which relief may be granted as to their substantive due process claim, and Count II is **DISMISSED.**  Fed. R. Civ. P. 12(b)(6).  Because the only claims remaining are state law claims and the court declines to exercise supplemental jurisdiction, Defendants' motion to dismiss as to Counts I, III, VI, and V is **DENIED AS MOOT** and Plaintiffs' remaining claims are **REMANDED** to the Oakland County Circuit Court for further determination.  This is a final order and closes the case in this court.

**SO ORDERED**.

Date: March 1, 2024                              s/ F. Kay Behm
                                                 F. Kay Behm
                                                 United States District Judge